1  PATRICK E. BREEN (BAR NO. 81579)
   RYAN T. WAGGONER (BAR NO. 251694)
2  RACHEL M. SANDERS (BAR NO. 258652)
   ALLEN MATKINS LECK GAMBLE
3    MALLORY & NATSIS LLP
   865 South Figueroa Street, Suite 2800
4  Los Angeles, California 90017-2543
   Phone: (213) 622-5555
5  Fax: (213) 620-8816
   E-Mail: pbreen@allenmatkins.com
6          rwaggoner@allenmatkins.com
           rsanders@allenmatkins.com
7
   Attorneys for Defendant
8  ONNI TIMES SQUARE, LP

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                  WESTERN DIVISION

| | |
|---|---|
| 12  VXI Global Solutions, LLC, a California LLC, | Case No. 2:16-cv-08562-DMG-GJS |
| 13          Plaintiff, | ASSIGNED FOR ALL PURPOSES TO Judge Dolly M. Gee, Ctrm 8C |
| 14      v. | DEFENDANT ONNI TIMES SQUARE L.P.'S OPPOSITION TO PLAINTIFF VXI GLOBAL SOLUTION, LLC'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER |
| 15  Onni Times Square, L.P., a Nevada limited partnership, | |
| 16 | |
| 17          Defendants. | Complaint Filed: November 16, 2016 |
| 18 | |

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .................................................................................. 1

II. BACKGROUND FACTS.......................................................................... 1

III. LEGAL STANDARD ON AN APPLICATION FOR A
    TEMPORARY RESTRAINING ORDER ..................................................... 4

IV. THE COURT SHOULD DENY VXI'S APPLICATION TO
    ENJOIN THE UNLAWFUL DETAINER PROCEEDING.......................... 5

    A.  This Court lacks jurisdiction .................................................... 5

    B.  The Anti-Injunction Act bars this Court from acting on the
        requested relief ........................................................................ 7

    C.  VXI is not likely to succeed on the merits of its claim for
        Declaratory Relief ................................................................... 11

    D.  VXI is not likely to succeed on the merits of its claim for
        violation of 42 U.S.C. § 1982, nor does it even address this
        claim in its moving papers...................................................... 14

    E.  The Court should decline to issue the injunction for
        additional reasons .................................................................. 18

V.  CONCLUSION.......................................................................... 20

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3 **Cases**

4  *Amerada Petroleum Corp v. Marshall,*
   381 F.2d 661 (5th Cir. 1967) ........................................................ 12

5

6  *Arcamuzi v. Continental Air Lines, Inc.,*
   819 F.2d 935 (9th Cir. 1987) ........................................................ 4

7  *Atlantic Coast Line R. Co. v. Bhd. of Locomotive Engineers,*
   98 U.S. 281, 29495 (1970) ............................................................ 8

8

9  *Bechtel Petroleum, Inc. v. Webster,*
   796 F.2d 252 (9th Cir. 1986) ........................................................ 9

10 *Bilbrey by Bilbrey v. Brown,*
   738 F.2d 1462 (9th Cir. 1984) ...................................................... 11

11

12 *Campbell Soup Co. v. ConAgra, Inc.,*
   977 F.2d 86 (3d Cir. 1992) .......................................................... 4

13 *Carden v. Arkoma Assocs., LP,*
   494 U.S. 185 (1990) ................................................................ 5, 6

14

15 *Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n,*
   554 F.2d 1254 (3d Cir. 1977) ..................................................... 5, 6

16 *Carrasco v. HSBC Bank USA, N.A.,*
   2012 U.S. Dist. LEXIS 25496 (N.D. Cal. Feb.28, 2012) ...................... 9

17

18 *Childs v. Eltinge,*
   29 Cal. App. 3d 843 (1973) ......................................................... 12

19 *Cordero v. CM REO Trust,*
   2013 U.S. Dist. LEXIS 171235 (C.D. Cal. June 3, 2013) ...................... 8

20

21 *Denny's, Inc. v. Cake,*
   364 F.3d 521 (4th Cir. 2004) ....................................................... 10

22 *Deutsche Bank National Trust Co. v. Leonardo,*
   2011 U.S. Dist. LEXIS 83854 (C.D. Cal. 2011) ............................... 19

23

24 *Dogloo, Inc. v. Doskocil Mfg. Co., Inc.,*
   893 F.Supp. 911 (C.D. Cal. 1995) .................................................. 4

25 *Duenas v. OCWEN Loan Servicing, LLC,*
   2014, U.S. Dist. LEXIS 97625, *8 ............................................. 19, 20

26

27 *Elston Inv., Ltd. v. David Altman Leasing Corp.,*
   731 F.2d 436 (7th Cir. 1984) ........................................................ 6

28 *Fajardo v. Ross,*
   2012 U.S. Dist. LEXIS 92302 (E.D. Cal. July 3, 2012) ......................... 9

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1062751.01/LA

**Page(s)**

*Farah v. Wells Fargo Home Mortgage,*
    2013 U.S. Dist. LEXIS 49762, (N.D. Cal. Apr. 5, 2013).................................9

*Fidelity & Deposit Co. of Md. v. City of Sheboygan Falls,*
    713 F.2d 1261 (7th Cir. 1983) ...................................................5

*Grupo Dataflux v. Atlas Global Group, L.P.,*
    541 U.S. 567 (2004)..............................................................5

*Hertz Corp. v. Friend,*
    130 S. Ct. 1181 (2010).........................................................6

*Houston Gen. Ins. Co. v. Taylor Lumber & Treating, Inc.,*
    1997 U.S. Dist. LEXIS 1243, at *3 (E.D. La. 1997)....................... 13

*Johnson v. Columbia Props. Anchorage, LP,*
    437 F.3d 894 (9th Cir. 2006) ...................................................6

*Johnson v. Macy,*
    2:15-cv-07165-FMO-AS (C.D. Cal.)...................................... 9, 10

*Le v. 1st Nat'l Lending Servs.,*
    2013 U.S. Dist. LEXIS 85018 (N.D. Cal. June 7, 2013).....................9

*McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.,*
    298 U.S. 178 (1936)..............................................................6

*Michener v. Wells Fargo Home Mortgage,*
    2012 U.S. Dist. LEXIS 103225 (N.D. Cal. July 24, 2012) .................9

*New York State Teachers Retirement Sys. v. Kalkus,*
    764 F.2d 1015 (4th Cir. 1985) .................................................6

*Ortiz v. Mortgage It, Inc.,*
    2009 U.S. Dist. Lexis 114695, *8 (S.D. Cal. 2009) ...................... 10

*Providence-St. Margaret Health Ctr. v. Stone, Marraccini & Patterson,*
    1989 U.S. Dist. LEXIS 6182, at *6 (D. Kan. 1989)....................... 13

*Rios v. Bank of N.Y. Mellon ex rel. CWABS Inc.,*
    2014 U.S. Dist. LEXIS 1176 (C.D. Cal. Jan. 2, 2014)................... 10

*Sandpiper Vill. Condo. Assoc., Inc. v. Louisiana-Pac. Corp.,*
    428 F.3d 831 (9th Cir. 2005) ...................................................8

*Scherbenske v. Wachovia Mortg., FSB,*
    626 F. Supp. 2d 1052 (E.D. Cal 2009) .................................. 9, 10

*Shell Oil Co. v. Frusetta,*
    290 F.2d 689 (9th Cir. 1961) ............................................ 11, 12

*Stanley v. Univ. of So. Calif.,*
    13 F.3d 1212 (9th Cir. 1994) ............................................. 4, 18

**Page(s)**

*State Farm Fire and Gas Co.,*
    118 F.R.D. 426 (M.D. N.C. 1988) ........................................................... 12, 13

*Stouffer Corp. v. Breckenridge,*
    859 F.2d 75 (8th Cir. 1988) ..........................................................................6

*Strawbridge v. Curtiss,*
    7 U.S. 267 (1806)..........................................................................................5

*Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n,*
    657 F.2d 29 (3d Cir. 1981) ...........................................................................6

*Weaver v. Florida Power & Light Co.,*
    172 F.3d 771 (11th Cir. 1999) ................................................................. 4, 5

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982)................................................................................. 4, 18

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) ................................................................................... 11

**Statutes**

28 U.S.C. § 1332(a)..........................................................................................5

28 U.S.C. § 1332(c)(1)......................................................................................6

28 U.S.C. § 1982 ................................................................................ 6, 14, 18

28 U.S.C. § 2201 .......................................................................................... 11

28 U.S.C. § 2201(a)....................................................................................... 11

28 U.S.C. § 2202 .......................................................................................... 11

28 U.S.C. § 2283 ............................................................................................8

Cal. Civ. Proc. Code  § 1161...........................................................................8

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1062751.01/LA

(iv)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff VXI Global Solutions, LLC ("VXI"), a tenant facing eviction pursuant to the terms of a signed lease, strategically filed this action one day before Defendant Onni Times Square, LP's ("Onni") notice to quit expired and two days before Onni filed an unlawful detainer proceeding.  VXI's strategy is transparent: initiate a collateral proceeding to frustrate Onni's statutory right to an expedited unlawful detainer proceeding, and to postpone VXI's inevitable eviction.  VXI's attempt to game the system by filing in federal court, however, must fail because VXI's claims suffer from incurable jurisdictional and substantive defects.

VXI's smokescreen tactics including the filing of a First Amended Complaint ("FAC") just yesterday, which includes a sham Civil Rights Act claim, should not distract the Court from a simple fact: The parties are in federal court as a result of VXI's gamesmanship designed to frustrate Onni's statutory right to an expedited unlawful detainer proceeding.

The Court should not reward VXI for its gamesmanship.  Were this Court to enjoin an unlawful detainer proceeding, it would incentivize tenants to employ the same strategy: hire a law firm with the playbook necessary to beat the system and render California's unlawful detainer statute inoperative.

Onni respectfully requests that the Court deny VXI's application and decline to stay the unlawful detainer proceeding.  Not only is VXI unlikely to prevail on its underlying claims, as discussed herein, but it has an adequate remedy in that it can assert the same claims in its defense to the very unlawful detainer action that it seeks to enjoin.

## II.    BACKGROUND FACTS

Facing eviction from the Los Angeles Times building, VXI strategically filed this action one day before Onni's notice to quit expired.  VXI is facing eviction because Onni and its predecessor-in-interest, a subsidiary of Tribune Media

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1062751.01/LA

1  Company ("Tribune), lawfully exercised their right to recapture the premises

2  following VXI's sale of its voting equity to a third party with which Onni has no

3  contractual relationship, The Carlyle Group ("Carlyle").

4      VXI Global Solutions, Inc. ("VXI Inc.")[1], as tenant, and Tribune, as landlord,

5  entered into a written lease agreement (the "Lease") on July 6, 2012 pursuant to

6  which VXI Inc. leased from Tribune office space (the "Property") at the Los

7  Angeles Times building.  FAC ¶ 26.

8      The Lease contains a "recapture clause."  FAC ¶ 29-30; Exhibit A § 11.02.  A

9  recapture clause is a lease provision that empowers a landlord to terminate the lease

10 and retake the Property upon certain conditions.  FAC Exhibit A.

11     Per Section 11.02 of the Lease, Onni may exercise its right to recapture the

12 Property upon a "Transfer," as that term is defined in the Lease.  FAC Exhibit A at

13 § 11.02.

14     There are six types of "Transfers" under the Lease.  FAC Exhibit A at

15 §§ 11.01, 11.02 and 11.04.  One type of "Transfer" occurs if VXI sells its voting

16 equity to a third party and a "change of control" occurs.  *Id.*

17     Section 11.01 states, in pertinent part:

18         "If the entity(ies) which directly or indirectly controls the
           voting shares/rights of Tenant (other than through the
19         ownership of voting securities listed on a recognized
           securities exchange) changes at any time, such change of
20         ownership or control shall constitute a Transfer."

21 FAC Exhibit A at § 11.01.

22     Section 11.04 states, in pertinent part:

23         "Notwithstanding the foregoing, if any parent, affiliate or
24         subsidiary to which this Lease has been assigned or
           transferred subsequently sells or transfers its voting equity
25         or its interest under this Lease other than to another parent,

[1]  The signatory to the Lease is VXI Global Solutions, Inc. (FAC at Exh. A).
However, the plaintiff is VXI Global Solutions, LLC, a completely different
entity.  Neither the FAC nor the ex parte papers explain how or why VXI (as
defined) has a right to bring this action.  Further, VXI Inc. is a California
corporation, and lacks diversity with Onni.  *See* Section V(a) below.

subsidiary or affiliate of the original Tenant named hereunder, such sale of transfer shall be deemed to be a Transfer requiring consent of Landlord hereunder."

FAC Exhibit A at § 11.04.

In Summer 2016, VXI entered into discussions with Carlyle regarding a potential sale of VXI's voting equity to Carlyle.  FAC ¶ 34.

On August 3, 2016, VXI, through its corporate counsel, requested in writing Tribune's consent to VXI's sale of its voting equity to Carlyle, recognizing this transaction would constitute a "Transfer" under the Lease requiring Tribune's consent.  FAC ¶ 35.

On September 14, 2016, in response to VXI's request for Tribune's consent to the Carlyle transaction, Tribune exercised its right to recapture the Property.  FAC ¶ 36.

On September 26, 2016, Onni acquired the Los Angeles Times building from Tribune and has succeeded to the rights and obligations of Tribune under the Lease. FAC ¶ 32.

VXI sold its voting equity to Carlyle on October 31, 2016, and a "change in control" has occurred.  FAC ¶ 34.

On November 1, 2016, Onni caused to be served a 15-day notice to quit (the "Notice to Quit").  FAC ¶ 37, Exhibit B.  The Notice to Quit required VXI to vacate the Property by November 16, 2016.  If VXI failed to vacate the Property by November 16, 2016, Onni could file an unlawful detainer action the next day, November 17, 2016.

On November 16, 2016 – one day before the expiration of the Notice to Quit – VXI strategically filed this action.

On November 18, 2016, Onni filed an unlawful detainer action against VXI in the Los Angeles Superior Court, styled *Onni Times Square LP v. VXI Global Solutions, Inc., et al.* Case No. BC641211 (the "UD Action").  VXI's Motion, Exh.

D.  VXI makes much of the fact that Onni filed a "nearly 300-page unlawful detainer action[.]"  VXI's Motion, 1:11-12; 8: 1-2; 9:10-11.  But, notably, Onni's complaint in the UD Action is only ten (10) pages, with the Lease taking up the majority of those referenced pages.  Ironically, VXI's FAC in the instant action is much longer than the complaint in the UD Action.

## III.   LEGAL STANDARD ON AN APPLICATION FOR A TEMPORARY RESTRAINING ORDER.

The basis for injunctive relief in the federal courts has always been (1) probability of success on the merits; (2) irreparable injury; and (3) the inadequacy of legal remedies. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); *Stanley v. Univ. of So. Calif.,* 13 F.3d 1212, 1320 (9th Cir. 1994).  For a temporary restraining order or preliminary injunction to issue, a movant must satisfy the general equitable requirements above by showing a significant threat of irreparable injury *and* that legal remedies are inadequate.  *Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935, 937 (9th Cir. 1987).

Put another way, in order to obtain injunctive relief, a "[p]laintiff must demonstrate potential harm which *cannot* be redressed by a legal or equitable remedy." *Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 91 (3d Cir. 1992) (emphasis added).  Injunctive relief (both TRO and preliminary injunction) will be denied where a plaintiff has an alternative legal remedy.  *Weaver v. Florida Power & Light Co.,* 172 F.3d 771, 773 (11th Cir. 1999).

Finally, a court should never afford injunctive relief as a matter of course.  In each case, the court must balance the competing claims of injury and must consider the effect on each party of granting or denying the requested relief.  *Dogloo, Inc. v. Doskocil Mfg. Co., Inc.,* 893 F.Supp. 911, 917 (C.D. Cal. 1995).

Here, VXI has failed to show a likelihood of success on the merits and has made absolutely no showing that alternative legal remedies are inadequate. *Arcamuzi,* 819 F.2d at 937; *Campbell Soup Co.,* 977 F.2d at 91; *Weaver,* 172 F.3d at

773.  Indeed, VXI has an adequate legal remedy: defending itself in the UD Action. Moreover, this Court lacks subject matter jurisdiction and cannot grant the relief requested.  VXI's Application must be denied.

## IV.    THE COURT SHOULD DENY VXI'S APPLICATION TO ENJOIN THE UNLAWFUL DETAINER PROCEEDING.

### A.    This Court lacks jurisdiction.

Article III of the Constitution provides, in pertinent part, that "the judicial Power shall extend to . . . Controversies . . . between Citizens of different States." Congress first authorized the federal courts to exercise diversity jurisdiction in the Judiciary Act of 1789, ch. 20, § 11, 1 Stat. 78.  In its current form, the diversity statute provides that "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds . . . $ 75,000 . . ., and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a).

Since its enactment, the diversity statute has required "complete diversity" of citizenship.  *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806).  "For a case to be within the diversity jurisdiction of the federal courts, diversity must be 'complete,' meaning that no plaintiff may be a citizen of the same state as any defendant." *Fidelity & Deposit Co. of Md. v. City of Sheboygan Falls*, 713 F.2d 1261, 1264 (7th Cir. 1983) (citing *Strawbridge, supra.*)

For diversity purposes, a limited partnership – such as Onni – partakes of the citizenship of every one of its general and limited partners.  *Carden v. Arkoma Assocs., LP*, 494 U.S. 185, 195-96 (1990); *see also Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 578 (2004) ("*Carden* is the subconstitutional rule by which we determine the citizenship of a partnership.").

This rule, which requires the inclusion of limited and general partners in the diversity equation, was first articulated in a Third Circuit decision, *Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n.*, 554 F.2d 1254 (3d Cir. 1977).  *See also Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n*, 657 F.2d 29 (3d Cir.

1  1981) (following *Carlsberg*).  Other circuits soon followed this reasoning.  *Stouffer*

2  *Corp. v. Breckenridge*, 859 F.2d 75 (8th Cir. 1988); *New York State Teachers*

3  *Retirement Sys. v. Kalkus*, 764 F.2d 1015 (4th Cir. 1985); *Elston Inv., Ltd. v. David*

4  *Altman Leasing Corp.* 731 F.2d 436 (7th Cir. 1984).  *Carden* and its progeny

5  enunciated a uniform citizenship test for partnerships.

6        By contrast, a corporation is a citizen only of (1) the state where its principal

7  place of business is located, and (2) the state in which it is incorporated.  28 U.S.C.

8  § 1332(c)(1).  This means that "most corporations" will have "dual citizenship."

9  13F Wright & Miller § 3642, p. 45.

10       A corporation's principal place of business is its "nerve center":  "the place

11  where a corporation's offers direct, control and coordinate the corporation's

12  activities." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010) .  This will usually

13  be "the place where the corporation maintains its headquarters." *Id.*

14       A plaintiff must allege—and upon challenge, bears the burden of proving—

15  that diversity jurisdiction exists. *McNutt v. Gen. Motors Acceptance Corp. of Ind.,*

16  *Inc.* 298 U.S. 178, 189 (1936) ("The burden of proving all jurisdictional facts is on

17  the party asserting jurisdiction.")  Thus, VXI had the obligation of alleging that this

18  Court has diversity jurisdiction by breaking down the plaintiff LLC into its

19  constituent members. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894,

20  899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its

21  owners/members are citizens.").  VXI had the same obligation with respect to

22  pleading the citizenship of Onni, the LP defendant; again, VXI failed to even

23  attempt to satisfy its burden.  For this reason alone, this Court lacks jurisdiction of

24  the case, and certainly lacks the ability to grant a temporary restraining order.[2]

25

26  [2]  In its FAC, filed the same day as its ex parte application, VXI added a claim for
    Violation of 28 U.S.C. § 1982.  As explained below, the claim is a sham

27  designed to invent a federal question.  Regardless, VXI has not made any
    showing under section 1982 – and specifically disclaims any effort or intention

28  to do so – thus, VXI has failed to show a critical element to obtain a temporary
    restraining order: probability of success on the merits of the section 1982 claim.

1  Simply alleging that plaintiff is a California LLC and that defendant is a Nevada LP
2  does not come close to satisfying VXI's burden to allege subject matter/jurisdiction
3  based on diversity. FAC, ¶¶ 15-16.

4       Had VXI satisfied its pleading obligations, Onni would show the lack of
5  diversity with a plaintiff that apparently is a citizen of California and a defendant
6  that is also a citizen of California. Here, Onni's general partner is Onni California
7  #2 LLC, whose sole member and owner is Onni Real Estate Services #2 Inc.
8  ("ORES #2"), a corporation that has its principal place of business in California.
9  *See* Declaration of Daniel Bell ("Bell Decl."), ¶ 2. In addition, Onni's limited
10 partner is Capilano Properties #2, LLC, whose sole member is Onni Real Estate
11 Services #2 (USA), LLC, whose sole member is also ORES #2. Bell Decl., ¶ 2.
12 Onni has shown that each of its constituent partners/members is a California
13 corporation, thus defeating diversity jurisdiction.

14      Although the FAC does not sufficiently break down VXI's constituent
15 members, it still makes clear that California is the principal place of business for
16 VXI's business. Repeatedly, VXI calls the Property its "Headquarters". FAC ¶¶ 3-
17 6, 10-14, 45-49. Onni's drill down entity and the ultimate owner of Onni, ORES #2,
18 has its principal place of business in California as well. Bell Decl., ¶ 2. Thus, no
19 diversity jurisdiction exists as, according to the allegations of the FAC and the Bell
20 declaration, both entities have their "nerve center"—their principal places of
21 business—in California.

22      **B.      The Anti-Injunction Act bars this Court from acting on the**
23              **requested relief.**

24      VXI argues that because it won the race to the courthouse, this Court should
25 issue an injunction barring the UD Action from proceeding. VXI further alleges
26 that, "Onni rushed to file its UD the day after being served with this Complaint so
27 that it could invoke the federal Anti-Injunction Act […] and argue that this Court is
28 prohibited form enjoining state court proceedings." VXI Motion, 9:12-14. Not true;

1   it was VXI that rushed to beat the unlawful detainer action it knew was coming.

2   The 15-day notice to quit did not expire until November 16, 2016, the same date

3   VXI filed the instant action.  FAC, Exhibit B.  Under California law, Onni could not

4   file its UD Action until the notice to quit had expired.  *See, California Code of Civil*

5   *Procedure* § 1161.

6        VXI cannot escape the prohibition of the Anti-Injunction Act, which bars

7   federal intervention in state court actions "in all but the narrowest of circumstances."

8   *Sandpiper Vill. Condo. Assoc., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 842 (9th

9   Cir. 2005).  The Anti-Injunction Act provides: "A court of the United States may not

10   grant an injunction to stay proceedings in a State court except as expressly

11   authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to

12   protect or effectuate its judgments."  28 U.S.C. § 2283.  Because the statute "rests on

13   the fundamental constitutional independence of the States," the court must construe

14   the three enumerated exceptions narrowly.  *Atlantic Coast Line R. Co. v. Bhd. of*

15   *Locomotive Engineers*, 398 U.S. 281, 29495 (1970); see also *Negrete v. Allianz Life*

16   *Ins. Co. of N. Am.*, 523 F.3d 1091, 1101 (9th Cir. 2008).

17        Despite VXI's efforts to claim otherwise, there is no magic to an unlawful

18   detainer action that permits federal intervention.  To the contrary, as this Court has

19   held, "A request to enjoin 'a state court unlawful detainer action does not fall into

20   one of the exceptions listed in the [Anti-Injunction] Act.'"  *Cordero v. CM REO*

21   *Trust*, 2013 U.S. Dist. LEXIS 171235 (C.D. Cal. June 3, 2013)(13-cv-495-DMG

22   (PLA))(quoting *Diaz v. Nat'l City Bank*, 2012 U.S. Dist. LEXIS 81355, 2012 WL

23   2129916, *2 (S.D. Cal. June 12, 2012)), as adopted in relevant part by District Court

24   at 2013 U.S. Dist. LEXIS 171232.

25        And this Court is far from alone in rejecting attempts to interfere with state

26   court unlawful detainer proceedings.  "[N]umerous district courts have found that

27   the Anti-Injunction Act, 28 U.S.C. § 2283, prohibits a federal district court from

28   issuing a temporary restraining order staying unlawful detainer proceedings in state

1    court." *Le v. 1st Nat'l Lending Servs.*, 2013 U.S. Dist. LEXIS 85018 (N.D. Cal.

2    June 7, 2013), citing *Farah v. Wells Fargo Home Mortgage*, 13-CV-1127 PSG,

3    2013 U.S. Dist. LEXIS 49762, 2013 WL 1397405 (N.D. Cal. Apr. 5, 2013);

4    *Michener v. Wells Fargo Home Mortgage*, C 12-2003 PJH, 2012 U.S. Dist. LEXIS

5    103225, 2012 WL 3027538 (N.D. Cal. July 24, 2012); *Fajardo v. Ross*, 1:12-CV-

6    00217-AWI, 2012 U.S. Dist. LEXIS 92302, 2012 WL 2589244 (E.D. Cal. July 3,

7    2012); *Carrasco v. HSBC Bank USA, N.A.*, 2012 U.S. Dist. LEXIS 25496, 2012 WL

8    646251 at *3-4 (N.D. Cal. Feb.28, 2012); *Scherbenske v. Wachovia Mortgage, FSB*,

9    626 F. Supp. 2d 1052, 1059 (E.D. Cal. 2009).

10        A party seeking an injunction "must make a strong and unequivocal showing"

11   that an exception applies "to overcome the federal courts' proper disinclination to

12   intermeddle in state court proceedings." *Bechtel Petroleum, Inc. v. Webster*, 796

13   F.2d 252, 253-54 (9th Cir. 1986) (quoting *Southern California Petroleum Corp. v.*

14   *Harper*, 273 F.2d 715, 719 (5th Cir. 1960)).  XVI has not met that burden.  "There is

15   no federal statute authorizing a district court to enjoin a state unlawful detainer

16   action." *Scherbenske v. Wachovia Mortgage, FSB*, 626 F. Supp. 2d 1052, 1059

17   (E.D. Cal. 2009).  Nor has any judgment issued in the Federal Court Action.  And as

18   the numerous cases cited above make clear, there is no inherent basis for enjoining

19   the statutorily mandated procedures for unlawful detainer in the state court UD

20   Action.

21        VXI relies heavily on *Johnson v. Macy*, 2:15-cv-07165-FMO-AS (C.D. Cal.)

22   at footnote 3 of the order at Dkt. 16 in that case, no doubt because this case was

23   previously before Judge Olguin.  But *Johnson* only serves to underscore how

24   unwarranted interference with the UD Action is here.  In *Johnson*, a disabled

25   individual was harassed and discriminated against for years by the defendant, and

26   plaintiff filed a federal action alleging multiple claims for housing, disability and

27   other forms of discrimination that the District Court found likely to succeed.  The

28   defendant initiated eviction to short-circuit the federal action.  The opposite is true

1  in this case.  Onni had initiated the eviction process first by serving its notice on

2  VXI, and VXI scurried to federal court to short-circuit that statutory process.  In any

3  event, Judge Olguin's footnote is admittedly dicta ("Even if…").  *Johnson* is no help

4  to VXI.

5        Further, the Anti-Injunction Act applies despite the fact that VXI strategically

6  filed this action one day before Onni's notice to quit expired, i.e., one day before

7  Onni could have filed an unlawful detainer action.  See *Denny's, Inc. v. Cake*, 364

8  F.3d 521, 531 (4th Cir. 2004) ("the Act's prohibition on enjoining state court

9  proceedings applies to any such proceeding pending at the time the federal court

10  acts on the request for injunctive relief, regardless of when the state court action was

11  filed (emphasis in original)."); *Ortiz v. Mortgage It, Inc.*, 2009 U.S. Dist. Lexis

12  114695, *8 (S.D. Cal. 2009) (same).

13        Notably, none of the cases cited in support of VXI's argument that this court

14  has *in rem* or *quasi in rem* jurisdiction pertain to a *California* unlawful detainer case

15  and a duplicative federal court case.

16        VXI cites to the case of *Scherbenske v. Wachovia Mortg., FSB*, 626 F. Supp.

17  2d 1052, 1056 (E.D. Cal 2009) to stand for the proposition that an unlawful detainer

18  action seeking possession of real property was *quasi in rem* under California law.

19  VXI Motion, 11:3-5.  But notably, the court in that case, although the federal action

20  was filed first, declined to grant the requested TRO enjoining the state action.  The

21  court found that it had a duty to abstain from interfering with the related state court

22  proceeding, and noted that no federal statute existed that authorized a district court

23  to enjoin a state unlawful detainer action.  *Id., citing Colorado River Water*

24  *Conservation District v. United States*, 424 U.S. 800 (1976).

25        This Court should follow the recent guidelines of *Rios v. Bank of N.Y. Mellon*

26  *ex rel. CWABS Inc.*, 2014 U.S. Dist. LEXIS 1176, at *8-9 (C.D. Cal. Jan. 2, 2014),

27  where the Court denied (denying the plaintiff's request to enjoin the defendants from

28

1  further unlawful detainer actions because "the requested relief runs afoul of the

2  Anti-Injunction Act").

3      **C.**    **VXI is not likely to succeed on the merits of its claim for**

4          **Declaratory Relief.**

5      Not only has VXI failed to make a showing that it is likely to succeed on the

6  merits of its claim for Declaratory Relief, the claim itself is barred under these

7  circumstances.  The Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, provides

8  in pertinent part:

9          "In a case of actual controversy within its jurisdiction . . .
   any court of the United States, upon the filing of an

10          appropriate pleading, may declare the rights and other
   legal relations of any interested party seeking such

11          declaration, whether or not further relief is or could be
   sought. Any such declaration shall have the force and

12          effect of a final judgment or decree and shall be
   reviewable as such."

13

14  28 U.S.C. §2201(a).

15      Declaratory relief is appropriate "(1) when the judgment will serve a useful

16  purpose in clarifying and settling the legal relations in issue, and (2) when it will

17  terminate and afford relief from the uncertainty, insecurity, and controversy giving

18  rise to the proceeding."  *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.

19  1984).

20      The Declaratory Judgment Act, however, is subject to limitations.  Courts

21  possess discretion in determining whether and when to entertain an action under the

22  Declaratory Judgment Act, even when the suit otherwise satisfies subject matter

23  jurisdiction prerequisites.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 281-288

24  (1995).  "It is not the purpose of the Declaratory Judgment Act to encourage a race

25  to the courthouse for the purpose of transferring litigation to the federal courts from

26  the state courts."  *Shell Oil Co. v. Frusetta*, 290 F.2d 689, 692 (9th Cir. 1961)

27  (affirming the district court's granting of defendant's motion to dismiss).

28

1    Relevant here, a claim for declaratory relief is not proper where it is being
2    invoked in order to deprive the party entitled to affirmative relief the opportunity to
3    timely bring its own action in the forum of its choosing. *See Shell, supra,* 290 F.2d
4    at 692. Notably, a landlord's right to regain possession of property is governed
5    *exclusively* by state unlawful detainer statutes. *Childs v. Eltinge*, 29 Cal. App. 3d
6    843, 852 (1973) (finding that because landlord's right to regain possession was
7    governed exclusively by unlawful detainer statutes and because the pleadings in the
8    action for declaratory relief did not allege compliance with those statutes, the relief
9    sought by landlord in the unlawful detainer action could not be granted in the
10   declaratory relief action).

11       *Childs* prohibits the precise strategy VXI has employed through its filing of
12   the federal court action: VXI filed this action in an effort to litigate its unlawful
13   detainer defenses in federal court. Perhaps knowing that it could not force a delay in
14   the UD Action by removing that action to federal court, VXI instead tactically chose
15   to file this declaratory relief action one day before the expiration of Onni's notice to
16   quit. Given that the allegations in VXI's complaint essentially constitute its defense
17   to the UD Action, the instant action is nothing more than an attempt to litigate the
18   same issues in federal court, but at a much slower pace, thus allowing VXI to avoid
19   California's expedited unlawful detainer processings.

20       Numerous federal courts have even dismissed declaratory relief actions where
21   the plaintiff sought to preempt the defendant from filing an action in the forum of its
22   choosing. *See, e.g., State Farm Fire and Gas Co.*, 118 F.R.D. 426, at *429-30
23   (M.D. N.C. 1988) (dismissing declaratory judgment action where insurance
24   company filed a complaint prior to notifying the insured of its decision to deny his
25   claim) (*citing Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 & n. 3
26   (5th Cir. 1983) (affirming dismissal of declaratory action filed in anticipation of a
27   coercive suit)); *see also, Amerada Petroleum Corp v. Marshall*, 381 F.2d 661, 662
28   (5th Cir. 1967) (affirming dismissal of declaratory action filed in anticipation of

1  coercive suit); *Providence-St. Margaret Health Ctr. v. Stone, Marraccini &*

2  *Patterson*, 1989 U.S. Dist. LEXIS 6182, at *6 (D. Kan. 1989) (dismissing

3  declaratory judgment action that was "filed in anticipation of the coercive breach of

4  contract action which was later filed in the Eastern District of Missouri[,] and that

5  "sought to deprive defendant (the coercive plaintiff) its traditional choice of forum

6  and timing"); *Houston Gen. Ins. Co. v. Taylor Lumber & Treating, Inc.*, 1997 U.S.

7  Dist. LEXIS 1243, at *3 (E.D. La. 1997) (dismissing declaratory judgment action

8  after considering "(1) whether there is a pending state action in which all of the

9  matters in controversy may be fully litigated; (2) whether the declaratory plaintiff

10  filed suit in anticipation of a lawsuit filed by defendant; (3) whether the declaratory

11  plaintiff engaged in forum shopping in bringing the declaratory judgment action; (4)

12  whether possible inequities in allowing the declaratory plaintiff to gain precedence

13  in time or to change forum exist; (5) whether the federal court is a convenient forum

14  for the parties and witnesses; and (6) whether retaining the lawsuit in federal court

15  would serve the purposes of judicial economy").

16      Applying this well-settled principle, this Court should refuse to enjoin the UD

17  Action.  Accepting all of VXI's allegations as true, the face of the FAC shows that

18  Onni, not VXI, is the party entitled to affirmative relief.  Further, VXI was not

19  forced to bring this action because Onni unduly delayed in bringing its suit.  The

20  opposite is true: Onni filed the UD Action promptly after the expiration of the notice

21  to quit.  The Court should not tolerate, much less reward, VXI's obvious

22  gamesmanship designed to strip Onni of its "legitimate interests in choice of forum."

23  *See State Farm Fire & Gas Co.*, 118 F.R.D. at 430.  VXI will not suffer prejudice as

24  it will have the opportunity to achieve the relief sought in the instant suit via the UD

25  Action.

26

27

28

**D.  VXI is not likely to succeed on the merits of its claim for violation of 42 U.S.C. § 1982, nor does it even address this claim in its moving papers.**

VXI's cause of action for violation of 42 U.S.C. § 1982 is a sham.  Onni has owned the Property for approximately two months, and during that time has never had a complaint from VXI, or any other tenant at the Property, about Onni's purportedly discriminatory behavior.  (Bell Decl., ¶ 8)

VXI has admitted that Onni purchased the Property on September 26, 2016 FAC, ¶¶ 7, 32.  Thus, Onni has owned the Property, and acted as VXI's landlord, for only two months.  Yet the racially-based allegations made by VXI have nothing to do with Onni's ownership of the Property or Onni's conduct.  For example, VXI references an entirely different project (Wyvernwood, an apartment complex located some four miles away from the Property), simply so that VXI can quote Councilman Huizar on gentrification.  FAC, ¶ 54.

Similarly, the specific claims of "racial bias" alleged by VXI all relate to the prior owner of the Property.  For example, VXI claims that, "[i]n or around late 2014 [that is, almost two years before Onni purchased the Property] Landlord [meaning, "Tribune"] attempted to restrict VXI employees to the private Broadway side entrance[.]"  FAC ¶ 62.  On January 8, 2015, VXI protested this entrance restriction to Tribune, claiming that Tribune had made an agreement with VXI to allow VXI's employees to use all three entrances to the building.  FAC ¶ 63.  At the time this agreement was made, VXI alleges, "VXI had yet to move into Headquarters and Landlord [i.e., Tribune] was unaware of the overwhelmingly racially and ethnically diverse nature of VXI's workforce."  FAC ¶ 66.  After learning of the "racially and ethnically diverse nature of VXI's workforce, [Tribune] engaged in a series of strained and pretextual interpretations" of the parties' Lease to support the separate entrance.  FAC ¶ 67.  Again, all of this supposed conduct took place some 21 months before Onni purchased the Property.

1    The dispute purportedly continued on for a couple of weeks, through January

2    of 2015 until, at the end of January of 2015, Tribune "finally relented" and allowed

3    VXI's employees to use all three entrances.  FAC ¶¶ 70-73.

4    What is notable about these allegations, which take up three pages of VXI's

5    race-based facts:

6    • None of them relates to conduct by Onni.

7    • All of the alleged conduct took place at least 21 months before Onni

8      purchased the Property.

9    • The supposed racially-based conduct ended long before Onni had any

10     involvement with the Property.

11   The only conduct alleged against Onni is that, in its unlawful detainer action,

12   "Onni affirmatively alleged that VXI's 'conduct at the Property has been distasteful

13   and vexing to Former Landlord, [Onni] and other tenants at the Building.'"  FAC

14   ¶ 75.  Consistent with its misguided and feeble attempt to inflame the Court by

15   raising conduct by others that took place long before Onni owned the Property, VXI

16   fails to provide the Court the context of the "distasteful and vexing" quote.  Here is

17   what the unlawful detainer complaint says, in its entirety as relevant to the

18   "distasteful and vexing" language:

19       While Defendants portray themselves as staunch
         advocates of their employees' wellbeing and a beacon of
20       integrity and opportunity within the Los Angeles
         community, Defendants' actions tell an entirely different
21       story.  In 2014, the U.S. Equal Employment Opportunity
         Commission ("EEOC") sued Defendants because
22       Defendants subjected African American and Latino
         employees to constant sexual propositions, graphic
23       pictures and abusive language.  The EEOC filed its lawsuit
         in the United States District Court, Central District of
24       California (Western Division), styled *EEOC v. VXI Global
         Solutions, Inc. a/k/a, VXI Global Solutions, LLC*, Case No.
25       2:14-cv-07444.

26       Defendants ultimately paid $600,000 to settle the lawsuit.
         Additionally, Defendants agreed to retain an equal
27       employment opportunity consultant to revise the
         company's policies and procedures with respect to sexual
28       harassment and retaliation; and to provide training in those
         areas to all employees nationwide along with additional

1      training for management and human resources personnel
    on how to effectively deal with such complaints. They also
2      agreed to maintain a centralized system to track internal
    sexual harassment and retaliation complaints; conduct
3      surveys at company sites in Los Angeles, Texas and Ohio;
    and to post a notice on the matter at the Los Angeles site.
4      EEOC will monitor compliance with the four-year consent
    decree (the "Consent Decree"). A true and correct copy of
5      the Consent Decree is attached hereto as **Exhibit 14**.

6      For reasons specified in the Consent Decree and
    otherwise, Defendants' conduct at the Premises has been
7      distasteful and vexing to Former Landlord, Plaintiff and
    other tenants at the Building.

8  VXI's Motion, Exhibit D ¶¶ 38-40.

9

10      The irony here is palpable: VXI, having been sued by the federal government

11  for race and sexual harassment and misconduct, now attempts to use its illegal

12  actions to tar Onni. The context clearly shows that Onni—along with the federal

13  government and all decent-thinking people—believes VXI acted inappropriately

14  when it subjected minorities and women to harassment and retaliation in the

15  workplace. Yes, this conduct by VXI was, and still is, "vexing and distasteful" to

16  Onni. But that quote has nothing to do with any racial animus held by Onni; quite

17  the opposite, Onni believes that the type of racial and gender bias engaged in by

18  VXI has no part in this society. Period.

19      The timeline for VXI's section 1982 claim exposes VXI's attempt to pander to

20  Judge Olguin, the judge originally assigned to this case. In its original complaint,

21  VXI made no mention of any racial bias or motivation for Onni's termination of the

22  Lease. If VXI thought Onni had terminated the Lease for racial reasons, then

23  certainly VXI would have raised that claim from the outset; indeed, that claim

24  should have been VXI's flagship claim.

25      But no such claim existed in the original complaint. Nor did VXI's counsel

26  mention such a claim to Onni's counsel in their discussions or emails until

27  November 29. The timing of that mention is not coincidental.

28

1    The week prior, on November 21, 2016, VXI had informed Onni that it
2 intended to move the federal court for an injunction to stop the unlawful detainer
3 action. Declaration of Austin Norris in support of VXI's Motion, Exh. F. In a
4 phone call November 23 between Onni's counsel and VXI's counsel, Onni's counsel
5 informed VXI's counsel that complete diversity betweent he parties was lacking, and
6 that the Court lacked jurisdiction. Waggoner Decl., ¶ 3. Onni then analyzed the
7 federal court's ability to enjoin the unlawful detainer action and determined that the
8 Anti-Injunction Act and the failure of diversity jurisdiction prohibited such an
9 injunction. Waggoner Decl., ¶ 4. On November 27, Onni's lawyer wrote to VXI's
10 lawyer, informing him of the Anti-Injunction Act prohibition, and requesting to
11 meet on a Rule 12(b) motion that Onni intended to file. Norris Decl., Exh. G.
12 Onni's lawyer did not hear, so on November 28 he sent VXI's counsel a reminder
13 email and voicemail. Waggoner Decl., Exh. 4. Onni's lawyer did not receive a call
14 back, and he called again in the late afternoon on November 29, at which time the
15 lawyers connected and conferred. Waggoner Decl., ¶ 5.

16    During that call, VXI indicated, for the first time, that it would now contend
17 that the termination of the lease was racially motivated. Waggoner Decl., ¶ 5. Thus,
18 VXI informed Onni that it intended to bring a new claim, for violation of the Civil
19 Rights Act, in a first amended complaint.

20    By the time of that call, VXI had two new pieces of information that it did not
21 have when it filed its complaint: one, that the case had been assigned to Judge
22 Olguin; and, two, that VXI had problems with the Anti-Injunction Act and federal
23 court jurisdiction. Then, the section 1982 claim appears, a claim that purports to
24 invoke federal question jurisdiction (thus potentially solving the diversity
25 jurisdiction problem), and a claim that hits an area of the law where Judge Olguin
26 had previously issued an injunction to halt an unlawful detainer action (thus
27 potentially addressing the Anti-Injunction Act infirmity).

28

1   Given the short response period provided for the opposition to the ex parte

2   application and the inability of Onni to take discovery (Onni intends to move as

3   quickly as possible to take a Rule 30(b)(6) deposition regarding the section 1982

4   allegations), Onni cannot yet prove the improper motivations for VXI in filing the

5   1982 claim.  But the circumstantial evidence speaks volumes: no mention of race in

6   the original complaint, no mention of race in any discussions or other

7   communications between counsel, no mention of racially-based acts by Onni (even

8   in the FAC).  Yet after Onni points out the infirmities in VXI's strategy, the entire

9   termination switches from an economic, development-oriented termination to a

10   racially-motivated termination.

11   While Onni cannot (yet) prove the lack of a factual basis for the section 1982

12   claim, the Court can consider the genesis of that claim in ruling on the request for

13   injunctive relief.  Basic hornbook law requires that a court will not provide equitable

14   relief to a party with unclean hands; further, in order to seek equity, a party must do

15   equity.

16   Here, VXI has provided no facts and no evidence that would justify an

17   injunction based on the section 1982 claim.  Thus, as to that claim, no injunction can

18   issue.  And, as pointed out above, the Court lacks diversity jurisdiction as to the

19   other claims, thus no injunction can issue with respect to those claims either.

20   Notably, VXI does not even attempt to show in its moving papers that its

21   claim for violation of Section 1982 has a likelihood of success on the merits.  In

22   fact, the claim is mentioned only once in the moving papers – in a footnote.  VXI's

23   Motion, 2:22-23.  The Court cannot use this claim as a basis for issuing a TRO.

24   **E.**     **The Court should decline to issue the injunction for additional**

25        **reasons.**

26   As set forth above, in addition to showing irreparable injury, VXI must also

27   show inadequacy of legal remedies.  *See Weinberger,* 456 U.S. at 312; *Stanley,* 13

28   F.3d at 1320.  VXI fails to do so.  VXI's brief and the Yang declaration present a

1  parade of horribles that VXI claims will occur if this Court does not grant the

2  requested TRO: 1,000 people would be put out of work; clients around the world

3  would not be able to do business; 500,000 calls per week would go unanswered—

4  none of that is true.

5        If the Court does not grant the TRO, what happens?  The unlawful detainer

6  action goes forward in a state court that has expertise in these matters, on the

7  expedited schedule created by the California Legislature decades ago to avoid the

8  inappropriate delays that tenants often attempt to create.  The state superior court is

9  not some backwoods system that requires federal court intervention in order to

10  assure justice gets done.  The state superior court will not rubberstamp Onni's filing.

11  The state superior court will consider all appropriate arguments and defenses raised

12  by VXI, and will interpret the Lease to determine whether the recapture clause

13  applies, whether Onni has the right to terminate the Lease, and whether the parties

14  acted in compliance with the lease.  If VXI loses, it has the absolute right of appeal

15  to the second district court of appeal.  VXI can also ask the state court to stay, for

16  the duration of the appeal, any judgment entered against it.  In short, VXI has the

17  full system of rights and remedies afforded by the State of California for an

18  unlawful detainer action.

19        Why then has VXI asked for the TRO?  Quite simply: because the time to get

20  to trial in federal court is much longer than the time to get to trial on an unlawful

21  detainer action in state court.  In other words, VXI has asked this Court for a TRO

22  so that VXI can avoid its day of reckoning—for better or for worse—on the Lease.

23  This is an inappropriate request, as "an unlawful detainer action does not arise under

24  federal law, but arises instead under state law."  *Duenas v. OCWEN Loan Servicing,*

25  *LLC,* 2014, U.S. Dist. LEXIS 97625, *8, citing three U.S. District court cases in

26  California including *Deutsche Bank National Trust Co. v. Leonardo,* 2011 U.S. Dist.

27  LEXIS 83854 (C.D. Cal. 2011: "the complaint only asserts a claim for unlawful

28  detainer, a cause of action that is purely a matter of state law.")  In sum, this Court

1    should follow the law set by the other District Judges in California: "First of all,

2    [t]here is no federal statute authorizing a district court to enjoin a state unlawful

3    detainer action." *Duenas,* at *10.

4        Finally, public policy considerations require denial of the ex parte application.

5    The issuance of an injunction will set a dangerous precedent that could upend

6    California's unlawful detainer system with vast consequences in the real estate and

7    general economy, and flood the federal courts with unlawful detainer lease

8    litigation.  Every tenant facing eviction and having been served with a notice to quit

9    would be incentivized to file a federal declaratory relief action before the expiration

10   of the notice to quit, thereby frustrating California's expedited unlawful detainer

11   process.

12   **V.    CONCLUSION**

13       Well-settled case law and Onni's statutory right to an expedited unlawful

14   detainer action require that this Court deny VXI's application for a TRO.

15

16   Dated:  December 1, 2016               ALLEN MATKINS LECK GAMBLE

17                                          MALLORY & NATSIS LLP
                                            PATRICK E. BREEN

18                                          RYAN T. WAGGONER
                                            RACHEL M. SANDERS

19

20                                          By:_____*/s/ Patrick E. Breen*_____
                                                PATRICK E. BREEN

21                                              Attorneys for Defendant
                                                ONNI TIMES SQUARE, LP

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1062751.01/LA                                        -20-